**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

JEFFREY SHORE, *et al.*,                      *
                                              *
v.                                            *          Civil No. CCB-19-1341
                                              *
MAYOR AND CITY COUNCIL OF                     *
BALTIMORE CITY, *et al.*                      *
                                              *

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Plaintiffs Jeffrey Shore and Donna Curry filed a seven-count complaint against defendants Mayor and City Council of Baltimore City ("the Mayor"); the Baltimore Police Department ("BPD"); Jemell Rayam; Momodu Bondevea Kenton Gondo; Thomas Allers; Major Ian Dombrowski; Dep. Police Comm. Dean Palmere; John Does 1–5, described as unknown BPD supervisory officers; and John Does 6–10, described as unknown BPD officers. (ECF 1). The plaintiffs allege violations of the U.S. and Maryland constitutions as well as various tort claims. Rayam, Gondo, and Allers were never served in this matter.[1]

On January 13, 2020, BPD, Palmere, and Dombrowski (the "BPD defendants") filed a motion to dismiss, (ECF 28), as did the Mayor, (ECF 29). On January 14, 2020, the Clerk sent Rule 12/56 notices to both plaintiffs informing them of their right to file responses to the motions within 28 days and informing them that their failure to file responses may result in the dismissal of the case without further opportunity to present written argument. (*See* ECF 30, 31). The plaintiffs have not responded to the motions to dismiss. Accordingly, the court deems the matter ripe for review and, for the reasons explained below, will grant the motions to dismiss.

---

[1] According to a Joint Status Report, as of August 28, 2019, Rayam, Allers, and Gondo had not been served. (ECF 22). Shortly thereafter, the plaintiffs' counsel withdrew from the case, (ECF 25, 26), and since then, the plaintiffs have been without representation, (*see* ECF 27). Since their counsel withdrew from the case, the plaintiffs have not filed anything with the court.

## BACKGROUND

The following facts are taken from the Complaint. The court recites the minimum facts necessary to resolve the pending motions.

On June 27, 2014, BPD officers Rayam, Gondo, and Allers executed a search and seizure warrant for the plaintiffs' store. (Compl. ¶ 75, ECF 1). The plaintiffs had $20,000 in cash at the store, which they had lawfully accumulated through their various businesses. (*Id*. ¶ 76). During the search, Rayam, Gondo, and/or another officer[2] asked if there were any large amounts of money in the store, and Curry stated that she had $20,000 in her purse. (*Id*. ¶ 77). The officers then left the store. (*Id*. ¶ 79).

Later that day, Rayam contacted Thomas Finnegan and David Rahim, two civilian associates of his. (Compl. ¶ 80). Rayam, Finnegan, and Rahim agreed to rob the plaintiffs at home. (*Id*.).  Shortly after midnight on June 28, 2014, Finnegan and Rahim, who falsely presented themselves as police officers, entered the plaintiffs' home, threatened them at gunpoint, and stole the $20,000 from Curry's purse. (*Id*. ¶¶ 82–86). During the robbery, Rayam waited in a car outside. (*Id*. ¶ 85). The plaintiffs reported the robbery and repeatedly followed up with BPD, but did not receive any useful information other than the fact that the individuals who robbed them were not police officers. (*Id*. ¶¶ 88–89).

In 2017, Rayam, Gondo, and Allers pled guilty to various crimes committed while they were members of BPD's Gun Trace Task Force ("GTTF"). *See United States v. Gondo et al.*, No. CCB-17-106, ECF 196 (Rayam Plea Agreement), ECF 200 (Gondo Plea Agreement); *United States v. Allers*, No. CCB-17-452, ECF 20 (Allers Plea Agreement). As part of his plea agreement, Rayam admitted to entering residences and stealing from the occupants and then

---

[2] The plaintiffs do not clarify if this other officer was Allers, but do not allege that any officers other than Rayam, Gondo, or Allers searched the store that day.

splitting the proceeds with other GTTF members, including Gondo and Allers. (Compl. ¶¶ 47–49).[3]

On May 8, 2017, the plaintiffs learned that Rayam was the mastermind behind the robbery. (Compl. ¶ 90). May 8, 2017, was the date the plaintiffs were contacted by the FBI, which was investigating Rayam and other members of the Gun Trace Task Force ("GTTF"). (*Id.*).

The plaintiffs filed suit on May 7, 2019. In Counts 1–3, the plaintiffs allege violations of the Fourth and Fourteenth Amendments against Rayam, Allers, and Gondo (Count 1); against BPD and the Mayor (Count 2); and against Dombrowski, Palmere, Allers, and John Does 1–5 (Count 3). In Count 4, the plaintiffs allege various violations of the Maryland Declaration of Rights. Counts 5 and 6 are tort claims against Rayam (false arrest and false imprisonment), and Count 7 is a civil conspiracy claim against Rayam, Gondo, and Allers.

The BPD defendants filed a motion to dismiss, arguing, *inter alia*, that the plaintiffs' claims are time barred. (BPD Mot. at 6, ECF 28-1). The Mayor filed a motion to dismiss, adopting the reasoning of the BPD defendants' motion and further arguing that it is not liable for the actions of BPD and its members. (Mayor Mot. at 1, ECF 29-1).

## STANDARD OF REVIEW

To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the

---

[3] In his plea agreement, Rayam admitted to the "June 27, 2014, Robbery of D.C. and J.S.'s Home." (No. CCB-17-106, ECF 196 at 12). He admitted that he, Gondo, and "Sergeant A" executed the search warrant for D.C. and J.S.'s store, and that Rayam wanted to steal the money but Gondo did not. (*Id.*). Rayam stated that he, "T.F.," and "D.R." agreed to the robbery, and that "T.F. and D.R. presented themselves as police officers and seized the $20,000 that D.C. and J.S. had in fact brought home with them from the store," while Rayam "remained in a car outside so that if D.C. and J.S. called the police, [he] could intercept the police officers that responded and pretend to be responding to the incident himself." (*Id.*). Rayam's plea agreement does not include any mention of Allers in connection with the robbery of D.C. and J.S, (*id.*), and neither Allers nor Gondo admitted to any involvement with this robbery in their plea agreements, (*see* No. CCB-17-452, ECF 20; No. CCB-17-106, ECF 200).

complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted), "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). A court may consider a statute of limitations defense on a motion to dismiss only "where the defense is apparent from the face of the complaint." *Wright v. U.S. Postal Service*, 305 F. Supp. 2d 562, 563 (D. Md. 2004).

## DISCUSSION

The BPD defendants argue that the plaintiffs' claims should be dismissed because they are time barred. In Maryland, "[a] civil action shall be filed within three years from the date it accrues unless another provision of the Code provides a different time period within which an action shall be commenced." *See* Md. Code, Courts & Jud. Proc. ("CJP"), § 5-101. The three-year statute of limitations applies to the plaintiffs' federal constitutional claims, which are brought pursuant to 18 U.S.C. § 1983, *see Jersey Heights Neighborhood Ass'n v. Glendening*, 174 F.3d 180, 187 (4th Cir. 1999); *accord Weathersbee v. Baltimore City Fire Dep't*, 970 F. Supp. 2d 418, 429 (D. Md. 2013); their state constitutional claims, which are brought pursuant to Articles 24 and 26 of the Maryland Declaration of Rights, *see Kashaka v. Baltimore Cty., Maryland*, 450 F. Supp. 2d 610, 616 & n.11 (D. Md. 2006); and their false arrest and false imprisonment claims, *see Elat v. Ngoubene*, 993 F. Supp. 2d 497, 534 (D. Md. 2014) (citation omitted). As the plaintiffs' civil conspiracy claim is based on the underlying torts of false arrest

and false imprisonment, (Compl. ¶ 132), the civil conspiracy claim is also subject to the three-year statute of limitations. *See Green v. Pro Football, Inc*., 31 F. Supp. 3d 714, 722 (D. Md. 2014) ("A claim of civil conspiracy . . . shares a statute of limitations with the underlying tort.") (citations omitted). The Local Government Tort Claims Act ("LGTCA") further imposes a one-year notice requirement on those seeking to file claims against a local government or its employees, providing that "an action for unliquidated damages may not be brought against a local government or its employees unless the notice of the claim required by this section is given within 1 year after the injury." Md. Code, CJP, § 5-304(b)(1).

The Complaint was filed on May 7, 2019, almost five years after the robbery occurred. All of the plaintiffs' claims arise from the robbery conduct,[4] including their claims based on supervisory or *Monell* liability.[5] "In Maryland, the general rule is that the running of limitations against a cause of action begins upon the occurrence of the alleged wrong, unless there is a legislative or judicial exception which applies." *Poole v. Coakley & Williams Const., Inc*., 423 Md. 91, 131 (2011) (citation omitted); *accord Green*, 31 F. Supp. 3d at 722. If, however, the "discovery rule" applies, accrual is tolled until "a claimant gains knowledge sufficient to put him or her on inquiry." *Green*, 31 F. Supp. 3d at 722 (citation omitted). "Being on inquiry notice 'means having knowledge of circumstances which would cause a reasonable person in the position of the plaintiffs to undertake an investigation which, if pursued with reasonable diligence, would have led to knowledge of the alleged [cause of action].'" *Id*. at 722–23 (quoting

---

[4] Several of the counts include the broad allegation that the plaintiffs were subject to violations of their rights not to be "unlawfully searched, seized, detained in an unreasonable manner, not to be deprived of their liberty without due process of law, and not to be summarily punished." (*See, e.g*., Compl. ¶¶ 105, 112). The court assumes these deprivations refer to the robbery conduct, as there is no other incident involving the plaintiffs alleged in the Complaint.

[5] The plaintiffs' *Monell* claim (Count 2) and supervisory liability claim (Count 3) are both brought pursuant to 42 U.S.C. § 1983. "Under Section 1983, to hold the inactive Defendants liable, Plaintiff must first establish that at least one active Defendant violated his constitutional rights." *Marryshow v. Town of Bladensburg*, 139 F.R.D. 318, 319 (D. Md. 1991) (citations omitted).

*Anne Arundel Cnty. v. Halle Dev., Inc.*, 408 Md. 539, 971 (2009)) (further citation omitted) (alteration in original). Further, pursuant to Maryland's fraudulent concealment doctrine, "[i]f the knowledge of a cause of action is kept from a party by the fraud of an adverse party, the cause of action shall be deemed to accrue at the time when the party discovered, or by the exercise of ordinary diligence should have discovered the fraud." Md. Code, CJP, § 5-203.

It appears that the plaintiffs here seek to invoke the fraudulent concealment doctrine to toll accrual of their claims, alleging as follows:

> 90. May 8, 2017 was the [date] when Shore and Curry learned that a BPD police officer, Rayam, was the robbery mastermind; on that date they were contacted by the FBI, who was investigating Rayam and the other members of the GTTF.

> 91. In other words, Rayam, by and through his fraud and deception, kept the claimants from knowing that he, a Baltimore Police officer and local government employee, had committed acts against them constituting claims under the Local Government Tort Claims Act and concomitant federal civil rights violations.

(Compl. ¶¶ 90–91). The plaintiffs imply that their contact with the FBI led to their discovery of Rayam's and the other defendants' involvement in the robbery, and that the plaintiffs could not have discovered the involvement of the defendants earlier because of Rayam's "fraud and deception." But "knowledge of the identity of a particular defendant is not a necessary element to trigger the running of the statute of limitations," and the plaintiffs' lack of information about whom to sue is, by itself, insufficient to toll accrual of their claims. *See Doe v. Archdiocese of Washington*, 114 Md. App. 169, 188–89 (1997) (citation omitted). Here, the plaintiffs fail to plead sufficient facts to support a claim of fraudulent concealment. A "complaint relying on the fraudulent concealment doctrine must . . . contain specific allegations of how the fraud kept the plaintiff in ignorance of a cause of action, how the fraud was discovered, and why there was a delay in discovering the fraud, despite the plaintiff's diligence." *Green*, 31 F. Supp. 3d at 723 (quoting *Dual Inc. v. Lockheed Martin Corp.*, 383 Md. 151, 170 (2004)). The plaintiffs' only

allegation pertaining to fraudulent concealment is their conclusory assertion—without any accompanying details—that Rayam engaged in "fraud and deception." Moreover, there is no suggestion in the complaint that the BPD defendants or the Mayor were aware of this robbery and/or tried to conceal it.[6] The plaintiffs have thus not alleged sufficient facts to warrant application of the discovery rule or the fraudulent concealment doctrine.

As all of the plaintiffs' claims arise from the robbery, which occurred over three years before the filing of the complaint, and there are insufficient facts to toll accrual, Counts 1–7 as to all of the moving defendants are time barred. The court need not address the additional arguments raised in the motions to dismiss. The court will dismiss all claims against the BPD defendants and the Mayor with prejudice, and will dismiss all claims against the unserved defendants without prejudice.[7]

## CONCLUSION

For the foregoing reasons, the BPD defendants' and the Mayor's motions to dismiss will be granted. A separate order follows.


__6/2/20__                                                __/S/__
Date                                                      Catherine C. Blake
                                                         United States District Judge

---

[6] At most the plaintiffs allege generally that Palmere "was aware of constitutional violations by officers in [plainclothes] units (including Rayam and Allers), and failed to take reasonable steps to stop those violations." (Compl. ¶ 18).

[7] Although only the BPD defendants and the Mayor filed motions to dismiss, the reasons for dismissal likely are applicable to all defendants. Further, as noted, none of the other named defendants has been served.